## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| BETTY VANTREE and CYNTHIA RAYBORN, individually and on behalf of all others similarly situated, | **CLASS ACTION** |
| | **Case No.** |
| *Plaintiffs*, | 4:22cv70-DMB-JMV |
| | **JURY TRIAL DEMANDED** |
| vs. | |
| PROGRESSIVE GULF INSURANCE COMPANY and MOUNTAIN LAUREL ASSURANCE COMPANY, Ohio corporations, | |
| *Defendants*. | |
| _____/ | |

### CLASS ACTION COMPLAINT

Plaintiffs Betty Vantree and Cynthia Rayborn, by and through undersigned counsel, bring this class action, individually and on behalf of all others similarly situated, against Progressive Gulf Insurance Company ("Progressive") and Mountain Laurel Assurance Company ("Mountain Laurel") (collectively, "Defendants") and allege as follows:

### INTRODUCTION

1.      This is a class action on behalf of Plaintiffs and all other similarly situated claimants in Mississippi who received a payment for the loss of a totaled vehicle from Defendants, where Defendants used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles.   Through Mitchell's valuation, Defendants systemically thumb the scale when calculating the actual cash value ("ACV") of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory

management practices; (d) not applied by the major competitor of Defendants' vendor Mitchell; and (e) on information and belief, not applied by Defendants and Mitchell to insureds in other states like California.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendants' uniform insurance policies with Plaintiffs and all putative Class members (defined below) promises to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff Vantree's Policy ("Policy"), which is materially identical to the policy for Plaintiff Rayborn and for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Defendants, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under their insurance policy terms and applicable Mississippi law, Defendants have a duty to pay, and represent that they will pay, the ACV of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendants fail to fulfill this obligation by making improper and unreasonable adjustments to reduce the value of comparable vehicles, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4.      Specifically, Defendants, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiffs' and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of

adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B (Vantree's Market Valuation Report) at p. 11 and Exhibit C (Rayborn Market Valuation Report) at p. 8.

5.    To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendants never determine. Rather, this case challenges Defendants' systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendants or obligations undertaken by Defendants in their Policies, in order to illegally increase their own profits.

6.    Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendants with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of their insured's vehicles, and neither Plaintiffs nor the members of the Class had any roll in drafting its terms.

7.    Through Defendants' deceptive, fraudulent, and unfair scheme, Defendants violated Mississippi consumer protection laws, breached their contracts and the covenant of good faith and fair dealing and were unjustly enriched.

8.    As a result of Defendants' deceptive, fraudulent, and unfair scheme, Plaintiffs did not receive the benefit of their bargain, and thus sustained actual damages.

9.    By this action, Plaintiffs, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

**PARTIES**

10.    Plaintiff Betty Vantree, at all relevant times, was a Mississippi citizen. At all relevant times, Plaintiff Vantree was contracted with Progressive for automobile insurance. On or about May 15, 2019, Plaintiff Vantree was in a car wreck and Progressive deemed her vehicle to be a total loss.

11.    Plaintiff Rayborn, at all relevant times, was a Mississippi citizen. At all relevant times, Plaintiff Rayborn was contracted with Mountain Laurel for automobile insurance. On or about May 10, 2021, Plaintiff Rayborn was in a car wreck and Mountain Laurel deemed her vehicle to be a total loss

12.    Defendant Progressive Gulf Insurance Company is an Ohio company with its principal place of business in Ohio. Progressive provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

13.    Defendant Mountain Laurel Assurance Company is an Ohio company with its principal place of business in Ohio. Mountain Laurel provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

**JURISDICTION AND VENUE**

14.    Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of Mississippi. Defendants are Ohio Corporation that have their corporate headquarters in Ohio, and, at all relevant times hereto, Defendants were engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Mississippi.

4

15.     Plaintiffs estimate that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.00.

16.     Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District, and Defendants transact business in this District.

## FACTUAL ALLEGATIONS

**Plaintiff Betty Vantree's Accident**

17.     On May 15, 2019, Plaintiff Vantree was involved in a car wreck and sustained physical damage to her vehicle.

18.     Like all members of the putative Class, Plaintiff Vantree made a property damage claim to Progressive.

19.     Pursuant to the same policies and procedures, Progressive declared Plaintiff Vantree's vehicle to be a total loss and purported to offer her the ACV of her loss vehicle, as Progressive promised and represented it would under the uniform provisions of its insurance policies and Mississippi law.

20.     When calculating its valuations and claims payments, Progressive systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the

5

policy. Progressive provided a Mitchell Vehicle Valuation Report for Plaintiff Vantree on May 29, 2019. *See* Exhibit B.

21.     The Mitchell Vehicle Valuation Reports used by Progressive during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 11.

22.     In addition, however, the valuation reports used by Progressive make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Vantree, Projected Sold Adjustments in the amounts of -$832.00, -$956.00, -$916.00, -$787.00, -$1,048.00, and -$896.00, respectively, were applied to six of the nine comparable vehicles. Exhibit B at pp. 7-10.

23.     Defendant Progressive provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff Vantree's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 11.

24.     Defendant Progressive's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant Progressive does not do

what it says it will do – pay ACV. Moreover, as described above, Defendant Progressive provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 11.

**Plaintiff Cynthia Rayborn's Accident**

25.     On May 10, 2021, Plaintiff Rayborn was involved in a car wreck and sustained physical damage to her vehicle.

26.     Like all members of the putative Class, Plaintiff Rayborn made a property damage claim to Mountain Laurel.

27.     Pursuant to the same policies and procedures, Mountain Laurel declared Plaintiff Rayborn's vehicle to be a total loss and purported to offer her the ACV of her loss vehicle, as Mountain Laurel promised and represented it would under the uniform provisions of its insurance policies and Mississippi law.

28.     When calculating its valuations and claims payments, Mountain Laurel systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Mountain Laurel provided a Mitchell Vehicle Valuation Report for Plaintiff Rayborn on June 26, 2021. *See* Exhibit C.

29.     The Mitchell Vehicle Valuation Reports used by Mountain Laurel during the relevant period followed the same process, provided and disclosed the same or substantially the

same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit C at p. 8.

30.    In addition, however, the valuation reports used by Mountain Laurel make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Rayborn, Projected Sold Adjustments in the amounts of -$1,280.00, -$1,048.00, -$1,205.00, and -$1,318.00, respectively, were applied to each of the four comparable vehicles. Exhibit C at pp. 5-7.

31.    Defendant Mountain Laurel provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff Rayborn's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit C at p. 8.

32.    Defendant Mountain Laurel's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant Mountain Laurel does not do what it says it will do – pay ACV. Moreover, as described above, Defendant Mountain Laurel provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit C at p. 8.

**Defendants' Projected Sold Adjustments**

33.     In truth, Defendants' Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendants assume always exists without any explanation or support.

34.     Defendants' Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendants begin the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Defendants. Defendants document the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiffs do not challenge these documented adjustments. At this stage of the process, Defendants abandon the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

35.     The impropriety and arbitrariness of Defendants' Projected Sold Adjustments is further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

36.     On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Progressive entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Mississippi while not subjecting California claimants to the same negative adjustments.

37.     Plaintiffs and each member of the class were damaged by Defendants' application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendants applied proper methodologies and appraisal standards.

38.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendants for ACV.  Specifically, for Plaintiff Vantree, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant Progressive would have been $603.88 higher,[1] before adding the related increase in payments for applicable sales taxes. For Plaintiff Rayborn, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant Mountain Laurel would have been $1,212.75 higher,[2] before adding the related increase in payments for applicable sales taxes.

**Defendants' Deceptive and Illegal Fraudulent Scheme**

---

[1] $603.88 is the average of the Projected Sold Adjustments applied to six of the nine comparable vehicles in Plaintiff Vantree's valuation report.

[2] $1,212.75 is the average of the Projected Sold Adjustments applied to each of the four comparable vehicles in Plaintiff Rayborn's valuation report.

39.     To be clear, this case does not present a dispute about the amount of loss. Plaintiffs do not contest Defendants' determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendants to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendants' fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase their own profits.

40.     Importantly, Plaintiffs do not contest the ***amount*** of the Projected Sold Adjustment. Said another way, it is not that Defendants believe the Policy and Mississippi law allow for a 6% Projected Sold Adjustment, while Plaintiffs believe only a 3% adjustment is permitted. Rather, Plaintiffs allege that ***no Projected Sold Adjustment is permitted at all*** as a matter of law.

### CLASS ACTION ALLEGATIONS

41.     Plaintiffs brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Mississippi citizens insured by Defendants who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

42.     Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

43.     Plaintiffs reserves their right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into

additional subclasses, or modified in any other way.

44.    **Numerosity.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class members, the precise number is unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

45.    **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether Defendants systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

b.  Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendants for the ACV of Plaintiffs' and Class members' total loss vehicles;

c.  Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's ACV was deceptive;

d.  Whether Defendants' deceptive acts and improper practices injured Plaintiffs and members of the Class;

e.  Whether Defendants' acts violated their obligations under the policy of insurance;

f.  Whether Plaintiffs and the Class are entitled to compensatory damages, and if so,

the calculation of damages; and

g. Whether Plaintiffs and members of the Class are entitled to an injunction restraining Defendants' future deceptive acts and practices.

46. **Typicality.** The claims of the Plaintiffs, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiffs, depend on a showing of the acts of Defendants giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

47. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members whom she seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

48. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, such that it would be impracticable for the Class members to individually seek redress for Defendants' wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system. By contrast,

the class action device presents far fewer management difficulties, and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT 1**
**VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT**
**MISS. CODE § 75-24-3, *et seq.***

49.     Plaintiffs repeat and re-allege all previously alleged paragraphs as if fully alleged

herein.

50.     This Count is brought by Plaintiffs on behalf of the Class.

51.     Defendants, Plaintiffs, and the Class members are "persons" within the meaning

of Miss. Code § 75-24-3(a).

52.     Defendants were and are engaged in "trade" or "commerce" within the meaning

of Miss. Code § 75-24-3(b).

53.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair

methods of competition affecting commerce and unfair or deceptive trade practices in or

affecting commerce." Miss. Code § 75-24-5(1).

54.     As alleged herein, Defendants, through its agents, employees, and/or

subsidiaries, violated the Mississippi CPA by knowingly and intentionally concealing and

failing to disclose material facts regarding their application of an arbitrary Projected Sold

Adjustment to comparable vehicles in order to reduce their market value and, as a result, the

amount of Defendants' total-loss payments to insureds, as detailed above.

55.     By knowingly and intentionally misrepresenting, omitting, concealing, and

failing to disclose material facts regarding its application of an arbitrary Projected Sold

Adjustment to comparable vehicles, as detailed above, Defendants engaged in one or more

unfair or deceptive business practices prohibited by the Mississippi CPA.

14

56.     Defendants' misrepresentations and omissions regarding their application of an arbitrary Projected Sold Adjustment to comparable vehicles were made to Plaintiffs and the Class members in a uniform manner.

57.     Defendants unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs and the Class members, about Defendants application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce the amount of Defendants' total-loss payments to its insureds.

58.     The facts regarding Defendants' application of an arbitrary Projected Sold Adjustment to comparable vehicles that Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendants' insurance coverage.

59.     Plaintiffs and Class members had no way of discerning that Defendants representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class members did not, and could not, unravel Defendants deception on their own.

60.     Defendants had an ongoing duty to Plaintiffs and the Class members to refrain from engaging in unfair or deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class members a duty to disclose all the material facts concerning its application of an arbitrary Projected Sold Adjustment to

15

comparable vehicles because Defendants possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiffs and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

61.     Plaintiffs and the Class members were aggrieved by Defendants violations of the Mississippi CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, including that the Projected Sold Adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendants' total-loss payments under the Policy.

62.     Plaintiffs and the Class members purchased Defendants' insurance coverage in reliance on Defendants' misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendants' application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

63.     Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs and Class members would not have purchased insurance coverage from Defendans, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

64.     Defendants' violations of the Mississippi CPA present a continuing risk of future harm to Plaintiffs and the Class members.

65.     Plaintiffs and the Class members seek an order enjoining Defendants unfair and

deceptive acts or practices in violation of the Mississippi CPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Mississippi CPA.

## COUNT 2
## BREACH OF CONTRACT

66.     Plaintiffs repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

67.     This Count is brought by the Plaintiffs on behalf of the Class.

68.     Plaintiffs and each of the other Class members were insured under a policy issued by Defendants, as described herein.

69.     Plaintiffs and each of the other Class members made claims under their insurance contracts, which Defendants determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

70.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendants purported to pay Plaintiffs and each of the other Class members the ACV of their totaled vehicles.

71.     Defendants, however, failed to pay the ACV of Plaintiffs' and Class members' vehicles because Defendants applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendants' total-loss payments to insureds.

72.     Thus, Defendants failed to pay Plaintiffs and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other Class members.

73.     As a result of such contractual breaches, Plaintiffs and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment

17

and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

74.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

75.     This Count is brought by the Plaintiffs on behalf of the Class.

76.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

77.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

78.     Under the Policy, Defendants had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendants, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

79.     As such, Defendants breached the covenant of good faith and fair dealing by, *inter alia*:

18

a.  Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

b.  Failing to pay insureds the ACV of their total-loss vehicles;

c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total- loss vehicles and avoid paying insureds the ACV on their total-loss claims;

d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

80.     Defendants' breaches of the covenant of good faith and fair dealing have caused damages to Plaintiffs and the Class. Plaintiffs' and the Class members' damages include the amounts improperly deducted by Defendants from their payments to insureds on the basis of a Projected Sold Adjustment.

## COUNT 4
## UNJUST ENRICHMENT

81.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

82.     This Count is brought by the Plaintiffs on behalf of the Class.

83.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

84.     Defendants requested and received a monetary benefit at the expense of Plaintiffs and Class members in the form of premium payments for automobile insurance coverage.

85.     Defendants misrepresented, omitted, concealed, and/or failed to disclose material facts regarding their purported payment of ACV in the event of a total loss, specifically Defendants' application of an arbitrary Projected Sold Adjustment to comparable vehicles to

artificially reduce its total-loss payments to insureds.

86.     If Defendants had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendants' application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Mississippi law, Plaintiffs and the Class members either would not have purchased insurance through Defendants, or they would have paid less for such insurance coverage.

87.     Accordingly, Defendants were unjustly enriched by the premiums paid by Plaintiffs and the Class members to the detriment of Plaintiffs and the Class members.

88.     Plaintiffs and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendants were unjustly enriched, in an amount to be determined at trial.

## COUNT 5
## DECLARATORY JUDGMENT

89.     Plaintiffs repeat and re-allege all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

90.     This Count is brought by the Plaintiffs on behalf of the Class.

91.     A dispute between Plaintiffs and the Class and Defendants is before this Court concerning the construction of the auto insurance policies issued by Defendants, and the rights of Plaintiffs and the Class arising under that policy.

92.     Plaintiffs, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiffs seek a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendants' insurance contract, as well as a violation of law, for Defendants to base the valuation and payment of claims on values of

comparable vehicles that have been reduced by arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

93.     Defendants' unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendants have breached, and continue to breach, the express terms of their contracts of insurance with Plaintiffs and members of the Class.

94.     As a result of these breaches of contract and violations of law, Plaintiffs and the Class members have been injured.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully seek judgment in Plaintiffs' favor and in favor of the Class as follows:

A.  An Order certifying this action as a Class Action and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiffs and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendants' profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendants' described herein;

E.  An award to Plaintiffs' and the Class costs of suit, including reasonable attorneys' fees

as provided by law; and

F.  An award such further and additional relief as is necessary to redress the harm caused

by Defendants' unlawful conduct and as the Court may deem just and proper under the

circumstances.

Dated: May 13, 2022                    Respectfully submitted,

                                       Thomas M. Flanagan, Jr.
                                       Mississippi Bar No.: MB 5211
                                       PO Box 1081
                                       Greenwood, MS 38935
                                       Tel: 662-453-6626
                                       tomflanagan@bellsouth.net

                                       **NORMAND PLLC**
                                       Edmund A. Normand, Esq. *
                                       Florida Bar No.: 865590
                                       Amy L. Judkins, Esq. *
                                       Florida Bar No.: 125046
                                       3165 McCrory Place, Suite 175
                                       Orlando, FL 32803
                                       Telephone: (407) 603-6031
                                       Facsimile: (888) 974-2175
                                       ed@ednormand.com
                                       amy.judkins@normandpllc.com
                                       ean@normandpllc.com

                                       **SHAMIS & GENTILE, P.A.**
                                       Andrew J. Shamis, Esq.*
                                       Florida Bar No. 101754
                                       ashamis@shamisgentile.com
                                       14 NE 1st Avenue, Suite 705
                                       Miami, Florida 33132
                                       Telephone: 305-479-2299

                                       **EDELSBERG LAW, P.A.**
                                       Scott Edelsberg, Esq.*
                                       Florida Bar No. 0100537
                                       Christopher Gold, Esq.*
                                       Florida Bar No. 088733

scott@edelsberglaw.com
chris@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

\* *pro hac vice forthcoming*

**Counsel for Plaintiffs and the Proposed
Class**